## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS VAN ZANDT, *Administrator of the Estate of* MATTHEW MARTIN VAN ZANDT, | CIVIL ACTION NO. 3:24-CV-486 |
| Plaintiff | (MEHALCHICK, J.) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA/DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

This action was commenced by Thomas Van Zandt ("Plaintiff") as the Administrator of the Estate of Matthew Martin Van Zandt ("Van Zandt") by filing a complaint against Defendants the Commonwealth of Pennsylvania/Department of Corrections (the "Commonwealth/Department"), Casey Hartman ("Hartman"), Officer P. Baummer ("Baummer"), Officer M. Woomer ("Woomer"), and Sgt. D. Shaffer ("Shaffer") (collectively, Commonwealth Defendants), as well as against MHM Services, Inc., MHM Correctional Services, Inc., MHM Correctional Services, LLC, Centurion Health Services & Centurion of Pennsylvania and Joyce Knowles ("Knowles") (collectively, "MHM Defendants") (collectively with Commonwealth Defendants, "Defendants") on March 20, 2024. (Doc. 1). The operative amended complaint was filed on May 10, 2024, against the aforementioned Defendants. (Doc. 8). The amended complaint alleges violations of the Eighth Amendment pursuant 42 U.S.C. § 1983 ("§ 1983"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). (Doc. 8). Presently before the Court is a

motion to dismiss or to change venue filed by the Commonwealth Defendants (Doc. 18) and a motion to transfer venue filed by MHM Defendants (Doc. 20). For the following reasons, the Commonwealth Defendants' motion to dismiss will be **GRANTED**. (Doc. 18). The motions to transfer will be **DENIED**. (Doc. 18; Doc. 20).

I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

The following factual summary is taken from the amended complaint. (Doc. 8). This case arises from the death of Mr. Van Zandt while he was in the care and custody of SCI Houtzdale, a state correctional institution in Houtzdale, Clearfield County, Pennsylvania. (Doc. 8, ¶¶ 5-6). Plaintiff alleges that at the time of his incarceration, Mr. Van Zandt had a long and serious history of mental health issues, which included, between the years of 2010 through 2019, previous suicide attempts, psychiatric hospitalizations and treatment, as well as diagnoses of depression, post-traumatic stress disorder, and psychosis. (Doc. 8, at 5-6).

Mr. Van Zandt was detained after killing a man on March 6, 2019. (Doc. 8, ¶ 18). He was convicted and sentenced to a term of 12 to 24 years based upon a guilty but mentally ill plea on June 4, 2021. (Doc. 8, ¶ 20-21). As a pretrial detainee, Decedent was incarcerated at the Lancaster County Prison. (Doc. 8, ¶ 29). While housed there, Decedent experienced mental health episodes. (Doc. 8, ¶¶ 30-42). He was on suicide watch, attempted suicide while in custody, and spent time in the State Correctional Institute Torrance State Hospital due to his suicidality. (Doc. 8, ¶¶ 30-42). After his conviction, Mr. Van Zandt resided in SCI Smithfield from about June 9, 2021 to about July 9, 2021 and in SCI Camp Hill from about July 9, 2021 to about September 17, 2021. (Doc. 8, ¶¶ 43-52). Decedent was transferred to SCI Houtzdale on September 17, 2021. (Doc. 8, ¶ 53). Staff at SCI Houtzdale had access to all Mr. Van Zandt's health records, which detailed his previous suicide attempt while

incarcerated. (Doc. 8, ¶ 54). Still, after being screened, Mr. Van Zandt was not placed on suicide watch or put on psychiatric medication. (Doc. 8, ¶¶ 57-59). Instead, he was placed in general population where he was assigned to a cell with a cellmate and was not given suicide-proof bedding or clothing. (Doc. 8, ¶¶ 80, 140-141, 166, 170). Medical staff initially reported that Mr. Van Zandt was "doing well," but after his September 2021 case review with Dr. Saiqa Mushtaq, his mental health began to deteriorate. (Doc. 8, ¶¶ 57-59).

On October 5, 2021, Mr. Van Zandt began reporting hallucinations, anxiety, and depression with the medical providers and mental health professionals he worked with, including Defendants Hartman and Knowles. (Doc. 8, ¶¶ 60-74). According to the amended complaint, beginning in January 2022, Mr. Van Zandt began reporting worsening depression and by February 28, 2022, he reported multiple sexual assaults and suicidal thoughts to the Department and their staff, and specifically to Defendant Hartman. (Doc. 8, ¶¶ 71-79). On one occasion, after reporting his sexual assault, RN Pamela Oliver completed a suicide risk indicator checklist for Mr. Van Zandt, who reported that he was taking psychiatric medication and requested self-confinement/protective custody. (Doc. 8, ¶¶ 75-76). It is not clear from the amended complaint whether he was provided such accommodations. (Doc. 8). In the weeks following his visit with RN Pamela Oliver, Mr. Van Zandt stopped taking his medication and his mental health deteriorated further. (Doc. 8, ¶ 79). From March 14, 2022 through March 17, 2022, Mr. Van Zandt reported feeling suicidal and hallucinating. (Doc. 8, ¶¶ 80-85). Defendant Hartman encouraged him to use coping skills, and Mr. Van Zandt was placed on constant suicide watch and in a Psychiatric Observation Cell ("POC") for the first and only time at SCI Houtzdale. (Doc. 8, ¶¶ 80-105). Plaintiff alleges that prison personnel, including treatment professionals Dr. Adam Benjamin Bloom and Defendant Knowles, indicated in

their notes that they did not believe Mr. Van Zandt's suicidal ideations to be genuine. (Doc. 8, ¶¶ 103-116).

Mr. Van Zandt was removed from POC on April 8, 2022 and despite continued deterioration, "received little support from the medical and mental health providers and staff at SCI Houtzdale." (Doc. 8, ¶ 117). He attempted to receive support from prison psychiatry staff on April 29, 2022 but was not seen. (Doc. 8, ¶¶ 121-123). On May 7, 2022, Mr. Van Zandt called his mother and told her that "he was as hearing voices, fighting depression, did not know what to do, and was only prescribed antidepressants that he was not taking and were not helping." (Doc. 8, ¶¶ 124-126). His mother called SCI Houtzale to report that she had information that an inmate was going to do imminent harm to himself. (Doc. 8, ¶ 127). She was told no psychiatrist or psychologist was available to see her son. (Doc. 8, ¶¶ 128-130). On May 11, 2022, Mr. Van Zandt was seen by medical and mental health providers and told them he was going to hurt himself or someone else. (Doc. 8, ¶ 133). Despite his reports, he was not moved to POC, no changes were made to his medication or treatment, he remained in the general population without suicide prevention care, and he was scheduled for a follow-up in two weeks. (Doc. 8, ¶¶ 134-140). In fact, according to a Mental Health Contact Note prepared by Matthew Fetsko, a Psychological Services Specialist, "POC was deemed not warranted at this time." (Doc. 8, ¶ 139). Mr. Van Zandt also informed his cellmate that day that he was suicidal, and his cellmate encouraged him to speak to someone. (Doc. 8, ¶ 141). His cellmate left the cell at 6:00pm. (Doc. 8, ¶ 142). At approximately 7:30pm, the cellmate returned to find that Decedent had committed suicide by hanging himself with a bedsheet from an air vent. (Doc. 8, ¶ 143).

In the amended complaint, Plaintiff asserts the following Counts: Count One –

Violation of the ADA against the Commonwealth/Department; Count Two – Violation of the RA against the Commonwealth/Department; Count Three – Eighth Amendment Deliberate Indifference against Defendants Hartman and Knowles; Count Four – Eighth Amendment Deliberate Indifference against MHM Services, Inc., MHM Correctional Services, Inc., MHM Correctional Services, LLC, Centurion Health Services & Centurion of Pennsylvania; Count Five – Eighth Amendment Denial of Adequate Medical Care against Defendants Knowles and Hartman; and Count Six – Eighth Amendment Denial of Adequate Medical Care against MHM Services, Inc., MHM Correctional Services, Inc., MHM Correctional Services, LLC, Centurion Health Services & Centurion of Pennsylvania. (Doc. 8, at 24-49). As relief, Plaintiff seeks damages, including punitive damages, attorneys' fees and costs. (Doc. 8, at 49).

On June 13, 2024, the Commonwealth Defendants filed a motion to dismiss Count Five as asserted against Defendant Hartman, and Counts One and Two in their entirety. They also moved to change venue to the Western District of Pennsylvania. (Doc. 18). On June 27, 2024, the Commonwealth Defendants filed their brief in support of their motion to dismiss/change venue. (Doc. 19). On July 1, 2024, the MHM Defendants filed a motion to transfer venue. (Doc. 20). On July 15, 2024, the MHM Defendants filed a brief in support of their motion to transfer. (Doc. 23). On July 19, 2024, Plaintiff filed two briefs in opposition to each motion, respectively. (Doc. 24; Doc. 25). On August 2, 2024, the Commonwealth Defendants filed a reply brief. (Doc. 26). Accordingly, both motions to dismiss are ripe and ready for disposition. (Doc. 18; Doc. 19; Doc. 20; Doc. 23; Doc. 24; Doc. 25; Doc. 26).

## II.    LEGAL STANDARDS

### A.    MOTION TO TRANSFER

A court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties. 28 U.S.C. § 1404(a). Although the district court is given the ultimate discretion in transferring venue, the exercise of this discretion should not be liberal. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). A court adjudicating a motion pursuant to 28 U.S.C. § 1404(a) must first determine whether the proposed venue is appropriate—that is, a district court can only transfer the action to a district or division "where [the case] might have been brought." 28 U.S.C. § 1404(a) ; *see also High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). If transfer to the proposed district would satisfy this statutory limitation, the court must then balance several factors. "While there is no definitive list of factors, courts generally consider the following: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative court congestion in the competing courts; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; (12) and the familiarity of the trial judge with the applicable state law." *High River*, 353 F. Supp. 2d at 491 *(*citing *Jumara v. State Farms Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)). The first six factors are considered the "private interest factors," while the last six factors are the "public interest factors." *See Petroleum Serv. Co. v. Santie's Wholesale Oil Co.*, No. 3:23CV1500, 2024 WL 816619, at *3-8 (M.D. Pa. Feb. 27, 2024).

The moving party bears the burden of showing that these factors warrant transfer. *Jumara*, 55 F.3d at 879. However, the moving party "is not required to show 'truly compelling circumstances for ... change ... [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.' " *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

B. MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to

raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### C.  42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.  DISCUSSION

### A.  MOTION TO TRANSFER

Defendants contend that the Western District of Pennsylvania is the proper venue for this matter since this action might have been brought in the Western District of Pennsylvania and the balance of the *Jumara* public and private interest factors weigh in favor of transfer because the convenience of parties and witnesses and the interests of justice would be best served by transfer. (Doc. 19, at 13-15; Doc. 23, at 3); *see* 55 F.3d at 879-80. In opposition, Plaintiff contends that Defendants have not met their burden to establish that the balance of the relevant factors strongly favors transfer. (Doc. 24, at 9-18; Doc. 25, at 23).

**1. This Action Might Have Been Brought in the Western District of Pennsylvania**

If a plaintiff would have had a right to bring suit in the proposed transferee district at the commencement of the action, "independently of the wishes of [the] defendant," then the transferee district is a district where the action "might have been brought." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Thus, in order to prevail on a motion to transfer venue under § 1404(a), the moving party must demonstrate that venue, personal jurisdiction, and subject matter jurisdiction would all have been proper in the proposed transferee district. *Hoffman*, 363 U.S. at 344; *Shutte*, 431 F.2d at 24.

Here, Defendants contend that venue is proper in both the Middle and Western Districts of Pennsylvania. (Doc. 19, at 13; Doc. 23, at 2). Plaintiff does not respond to this argument in its brief in opposition to either motion and thus seems to concede that the action "might have been brought" in the Western District. (Doc. 24, at 10-11; Doc. 25, at 12). This Court agrees that because Defendants are domiciled in Pennsylvania and the alleged events leading to this action took place in the Western District of Pennsylvania, the action "might have been brought" in the Western District of Pennsylvania. *See Hoffman, 363 U.S. at 344.*

### 2. The Private Interest *Jumara* Factors

Having found that the action might have been brought in the Western District of Pennsylvania, the Court now considers the private interest factors. *Jumara*, 55 F. 3d at 879. The private interest factors relate to the "convenience of the parties and witnesses," as well as "'all other practical problems that make trial of a case easy, expeditious and inexpensive[.]'" *Petroleum Serv. Co.*, 2024 WL 816619, at *3 (quoting *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017).

The first private interest factor relates to the plaintiff's choice of forum. *Petroleum Serv. Co.*, 2024 WL 816619, at *3. Defendants argue that Plaintiff's forum choice of the Middle District of Pennsylvania, which is typically "a paramount consideration in any determination of a transfer request," should be given less deference here because the events of the case occurred in Defendants' preferred forum. (Doc. 19, at 14; Doc. 23, at 3); *see High River*, 353 F. Supp. 2d at 498–99; *Shutte*, 431 F.2d at 25. Plaintiff contests this conclusion, averring that because he "filed suit in his home state (and district, which were also the home state and district of Decedent), 'his choice of forum remains a paramount consideration which should not be lightly disturbed.'" (Doc. 24, at 12) (quoting *Chruby v. Bearjar*, No. 17-1631, 2018 WL 4051705, at *11 (M.D. Pa. Aug. 24, 2018) (internal quotations and citations omitted). The Court finds that the first factor, Plaintiff's choice of forum, strongly disfavors transfer. Plaintiff's forum choice is one of paramount importance, and since Plaintiff has chosen to bring suit in its home district, that is one that should not be disturbed without strong reasons. *Shutte*, 431 F.2d at 25.

The second factor, Defendants' choice of forum, is neutral. *See Jumara*, 55 F.3d at 879. Courts in this Circuit have found that this factor is redundant to the transfer analysis because

Defendants' preference for the Western District of Pennsylvania is inherent in this motion. *See Etheridge v. World Mktg. of Am., Inc.*, No. 1:20-CV-00272, 2021 WL 1564336, at *4 (M.D. Pa. Apr. 21, 2021) ("'in reality [the second factor] does little more than frame the issue, because there would be no motion to transfer unless the defendant prefers a different forum.'") (quoting *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018)).

The third factor examines where the claim arose. *See Jumara*, 55 F.3d at 879. Defendants provide that "[t]he claims in this case occurred at SCI Houtzdale, in the Western District, favoring transfer." (Doc. 19, at 14; Doc. 23, at 3). Plaintiff agrees that the events underlying this action occurred in the Western District, thus favoring transfer. (Doc. 25, at 16). The Court agrees that the third *Jumara* factor favors transfer. *Petroleum Serv. Co.*, 2024 WL 816619, at *5 (finding that the third factor favored transfer when "plaintiff's claims arose from the alleged conduct of defendant's Missouri-based employees").

The fourth and fifth private interest factors consider the convenience of the parties and any potential witnesses. *Jumara*, 55 F.3d at 879. The Court finds that these factors slightly favor transfer. Defendants argue that each individual Defendant reside in or near the Western District. (Doc. 19, at 14; Doc. 23, at 3). Plaintiff acknowledges that this factor slightly favors transfer, but also responds that Defendants have not shown any particular hardship that would arise from litigating in this District. (Doc. 24, at 13; Doc. 25, at 15).

Typically, courts consider identified witnesses and their location for this factor. *See Regmund v. Talisman Energy USA, Inc.*, No. CV 16-711, 2016 WL 5794227, at *8-9 (W.D. Pa. Aug. 31, 2016), *report and recommendation adopted,* No. 2:16CV711, 2016 WL 5720841 (W.D. Pa. Sept. 30, 2016) (analyzing the parties' identified witnesses and their locations and convenience for this factor); *Petroleum Serv. Co.*, 2024 WL 816619, at *5. While neither party

has identified all of its witnesses at this stage in the litigation, it is likely that "on-party fact witnesses who work at SCI Houtzdale will necessarily reside nearby in the Western District." (Doc. 23, at 3). However, the Court agrees with Plaintiff that Defendants have not shown any likely hardship or unavailability of such key witnesses due to litigation in the Middle District. The Court finds that the fourth and fifth factors are thus neutral or slightly favor transfer. *See Etheridge*, 2021 WL 1564336, at *5-6 (holding that the convenience factors are neutral when there is no evidence that a particular witness would be unavailable in one forum).

The sixth private interest factor relates to the location of books or records. Courts have given this factor less weight in the age of modern technology where records can be produced or transmitted electronically. *See Regmund*, 2016 WL 5794227, at *11 ("[m]odern technological advances have rendered this factor less significant than it was previously.)The parties do not dispute that this factor is neutral here. Therefore, the sixth public interest factor is neutral. *See Petroleum Serv. Co.*, 2024 WL 816619, at *6 ("the parties have not identified any documents that cannot be easily reproduced and provided in electronic format. This factor is thus neutral.").

### 3.  The Public Interest *Jumara* Factors

The Court next turns to the six public interest factors. *See Jumara*, 55 F.3d at 879-80. The public interest factors ask the Court to consider "'where litigation can proceed in the most efficient and inexpensive fashion.'" *Petroleum Serv. Co.*, 2024 WL 816619, at *6 (quoting *In re Amkor Tech., Inc. Sec. Litig.*, No. CIV.A. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)).

The parties do not analyze court congestion, nor does any party contest that either forum would have equal ability to enforce its judgment, that state law is not at issue. (Doc.

19, at 14-15; Doc. 23, at 3; Doc. 24, at 15; Doc. 25, at 19). This Court agrees that these factors are neutral. *See Etheridge*, 2021 WL 1564336, at \*6-7.

The parties dispute whether the factors that example practical considerations affecting any potential trial's ease, efficiency, or expense; local interest; and public policy favor transfer. (Doc. 19, at 14-15; Doc. 23, at 3; Doc. 24, at 15-17; Doc. 24, at 19-21); *see Jumara*, 55 F.3d at 879. According to Defendants, "both the practical considerations of trial and local interest in deciding controversies weigh in favor of a transfer to the western district [sic]." (Doc. 19, at 15). Defendants seem to suggest that the practical considerations factor favors transfer because witnesses will likely reside in the Western District and that the Western District has a local interest in resolving matters that occurred there. (Doc. 19, at 15, Doc. 23, at 3). Defendants do not provide more explanation for this argument. (Doc. 19; Doc. 23). Plaintiff refutes this conclusion, arguing that this case presents no information about how trial would be more expeditious in the Western District. (Doc. 24, at 15; Doc. 25, at 20). Plaintiff further points out that the local interests factor plays a lesser role where the action was filed in the same state as the proposed forum, and that the Department of Corrections is a statewide organization, in which all Pennsylvania residents have an interest. (Doc. 24, at 17; Doc. 25, at 20-21).

The Court agrees that these factors are likely also neutral. As to practical considerations, this Court again finds that Defendants have not showed how traveling to the Middle District would be difficult for any Defendant. *See Morrison v. Lindsey Lawn & Garden Inc.*, No. 13-1467, 2014 WL 831570, at \*5 (E.D. Pa. Mar. 4, 2014) (finding that the Eastern and Middle Districts in Pennsylvania do not implicate practical considerations under the *Jumara* test because as neighboring Districts, "the Court is not persuaded this case would be

tried more expeditiously or less expensively in either district."). Regarding public policy and local interests, the Department of Corrections affects Pennsylvanians in the Western and Middle District alike and neither forum has a larger local interest than the other, nor can the Court think of how the public policy between each forum would be differently implicated. *See Emmes Co. v. SAP America, Inc.*, No. 20-877, 2020 WL 7773903, at *3 (M.D. Pa. Dec. 30, 2020).

Having considered all *Jumara* private and public interest factors, the weight of the factors disfavor transfer. Accordingly, Defendants' motions to transfer venue pursuant to Section 1404(a) will be **DENIED**. (Doc. 18; Doc. 20).

B. Motion to Dismiss Count Five Against Defendant Hartman

In Count Five of the amended complaint, Plaintiff asserts her Eighth Amendment denial of adequate medical care claims against individual Defendants Knowles and Hartman. (Doc. 8, at 42). The Commonwealth Defendants move to dismiss Count Five as asserted against Defendant Hartman because they submit that "[Defendant] Hartman cannot be deliberately indifferent when she did her job as a therapist and relayed [Decedent's] concerns to psychiatry." (Doc. 19, at 11). Plaintiff responds that resolution of facts related to Defendant Hartman's role and responsibilities as a Psychological Services Associate is not properly decided on a motion to dismiss. (Doc. 24, at 22-24). Instead, Plaintiff contends that evaluating only the allegations in the amended complaint in the light most favorable to Plaintiff, he adequately states a claim against Defendant Hartman. (Doc. 24, at 24).

In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. 429 U.S. 97, 97 (1976). To state a claim for deliberate indifference to a medical need, a plaintiff must show "(1) a serious

medical need,[1] and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citations omitted). A prison employee acts with deliberate indifference to an inmate's serious medical need when the employee "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Ponzini v. PrimeCare Med.*, Inc., 269 F. Supp. 3d 444, 503 (M.D. Pa. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Commonwealth Defendants do not argue that Plaintiff did not allege a serious medical need but move to dismiss the claims against Defendant Hartman on the grounds that Plaintiff fails to allege that the Defendant Hartman was deliberately indifferent to that need. (Doc. 19, at 11). To survive the motion to dismiss, Plaintiff "must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to [the Decedent's] serious medical needs." *See Rivera v. PA Diebert*, No. 3:13-CV-01399, 2016 WL 4771104, at *5 (M.D. Pa. Aug. 17, 2016) (citing *Estelle*, 429 U.S. at 106; *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)), *report and recommendation adopted*, No. CV 3:13-1399, 2016 WL 4734683 (M.D. Pa. Sept. 12, 2016)).

Viewing the factual allegations as true and in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to allege sufficient facts to survive the Commonwealth Defendants' motion to dismiss Count Five against Defendant Hartman. (Doc. 18). Plaintiff alleges that Defendant Hartman knew that Mr. Van Zandt had mental health issues, including

---

[1] The Commonwealth Defendants do not dispute that Plaintiff has sufficiently alleged a serious medical need. (Doc. 19, at 9 n.3).

anxiety, when she began treating him in October 2021. (Doc. 8, ¶¶ 62-63). By November 2, 2021, Defendant Hartman knew of his worsening condition when he reported that "sometimes I have had thoughts it would be easier to not do it anymore, to not be alive." (Doc. 8, ¶ 64). Plaintiff further provides that in January 2022, Mr. Van Zandt reported worsening depressive thoughts to Defendant Hartman, but Defendant Hartman responded by telling Decedent to, in essence, "cope with his struggles on his own." (Doc. 8, ¶ 73). On February 28, 2022, Plaintiff alleges that Mr. Van Zandt reported to Defendant Hartman that he had been sexually assaulted multiple times since December 2021. (Doc. 8, ¶ 74). In response, Plaintiff avers that Defendant Hartman reported the incident to medical staff. (Doc. 8, ¶ 75). The next morning, after being evaluated by medical staff, Plaintiff contends that Mr. Van Zandt reported to Defendant Hartman that his depression was worsening, that "things are not ok," and that the situation was hopeless. (Doc. 8, ¶ 77). According to Plaintiff, Defendant Hartman noted that Mr. Van Zandt described his thoughts as "fleeting." (Doc. 8, ¶ 78). Thereafter Mr. Van Zandt stopped taking his medication and reported to Defendant Hartman that he was experiencing suicidal thoughts, that he was "really struggling and hearing voices," and that it was "overwhelming." (Doc. 8, ¶¶ 79, 82-84). Mr. Van Zandt allegedly told Defendant Hartman that he could not handle it and needed treatment. (Doc. 8, ¶ 84). Plaintiff avers that in response, Defendant Hartman "advised Mr. Van Zandt to use coping skills to push through his struggles." (Doc. 8, ¶ 85). Plaintiff asserts that Defendant Hartman "provided next-to-no-care and essentially told [Decedent] to deal with his mental health struggles on his own, i.e., by developing coping skills," despite the fact that Defendant Hartman was aware that Mr. Van Zandt was experiencing and demonstrating warning signs including "hallucinations, becoming more depressed, lacking in motivation, repeated

thoughts of suicide, inability to sleep, refusal to take medication, and a decreasing range of emotion and mood." (Doc. 8, ¶¶ 210-213). These allegations, taken alone, would sufficiently allege that Defendant Hartman knew of Decedent's serious medical need and disregarded it by failing to properly treat him. *See Ponzini*, 269 F. Supp. 3d at 503.

Plaintiff's allegations are contradicted by Defendant Hartman's notes, from which Plaintiff quotes when making allegations against Defendant Hartman. (Doc. 8, ¶¶ 62-101). Such documents are properly considered when Plaintiff has relied on them, and the evidence in the notes control when there are discrepancies between the documents' contents and Plaintiff's allegations. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111-12 (3d Cir. 2018) (finding that doctor's notes that a plaintiff attached to her complaint are properly considered at the motion to dismiss stage and stating that if the "exhibits contradict her allegations in the complaint, the exhibits control.") (citing *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)). According to the authentic treatment notes,[2] Defendant Hartman reported Mr. Van Zandt's suicidal ideation to psychiatry. (Doc. 26-1, at 22). Also of note, Defendant Hartman last worked with Mr. Van Zandt in March 2022. (Doc. 26-1, at 1). The treatment notes provide that during Defendant Hartman and Mr. Van Zandt's final interactions, Mr. Van Zandt said he was doing better, and Hartman noted that he seemed "baseline and insightful" and did not present a suicide risk. (Doc. 26-1, at 1-5). According to the notes, Mr. Van Zandt denied suicidal ideation or thoughts during these final sessions. (Doc. 26-1, at 1-5). The parties dispute the contours of Defendant Hartman's role and responsibilities as a Psychological Services Associate, but these factual disputes are not properly resolved at the motion to dismiss stage. *See Mahalik v. Cantania*, No. 18-2703, 2018

---

[2] Plaintiff has not contested the notes' authenticity.

WL 6725381, at *7 (E.D. Pa. Dec. 20, 2018) (finding that defendants' assumptions of facts not evidently pleaded by plaintiffs cannot be considered at the motion to dismiss stage).

The Court finds that Plaintiff has adequately alleged an Eighth Amendment claim against Defendant Hartman. Any factual disputes arising from the treatment notes, or Dr. Hartman's roles and responsibilities are more appropriately considered after discovery and at the dispositive motion stage. Accordingly, Commonwealth Defendants' motion to dismiss Plaintiff's Eighth Amendment claim regarding deliberate indifference to a serious medical need as asserted against Defendant Hartman is **DENIED**. (Doc. 18).

C. MOTION TO DISMISS COUNTS ONE AND TWO: VIOLATIONS OF THE AMERICANS DISABILITY ACT THE REHABILITATION ACT

In Count One and Two of the amended complaint, Plaintiff alleges that the the Commonwealth Defendants violated the ADA and the RA. (Doc. 8, at 34-37). According to Plaintiff, prior to his death, Mr. Van Zandt was disabled within the meaning of the ADA and the RA because he was suicidal and had multiple diagnosed mental health disorders, including but not limited to bipolar I disorder, depression with psychotic features, unspecified anxiety disorder, and borderline personality disorder. (Doc. 8, at 34-35). Plaintiff alleges "Defendant Commonwealth of Pennsylvania/Pennsylvania Department of Corrections denied [Decedent] his rights under the [ADA and RA] by failing to accommodate his known disabilities and implement necessary suicide-prevention methods, namely, keeping [Decedent] in a suicide-proof cell and with suicide proof clothing and bedding." (Doc. 8, ¶ 166). The Commonwealth Defendants argue these claims should be dismissed because they amount to "failure to treat" claims, to which the ADA and RA do not apply. (Doc. 19, at 11-13).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a claim under Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *McPherson v. County of Dauphin*, No. 19-1865, 2020 WL 1558206, at *2 (M.D. Pa. Mar. 24, 2020). The RA requires the same showing but applies only to "any program or activity receiving Federal financial assistance" and requires a plaintiff to demonstrate that their disability was the sole reason for the discrimination, not merely one reason. 29 U.S.C. § 794(a); *CG v. Pa. Dep't Educ.*, 734 F.3d 229, 235–36 (3d Cir. 2013).

"[D]ecisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, No. 19-CV-859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (collecting cases). These claims would inevitably fail because the ADA and RA "prohibit[ ] disability-based discrimination, 'not inadequate treatment for the disability.'" *Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (quotation omitted). However, a plaintiff may demonstrate a cognizable claim under the ADA and the RA if they allege a disabled detainee was denied a reasonable accommodation that would have granted them meaningful access to prison activities and programs, including those that implicate medical care. *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020), *aff'd*, No.21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021).

The parties dispute the sufficiency of Plaintiff's ADA and RA claims asserted against the Commonwealth/Department. (Doc. 19, at 12-13; Doc. 24, at 18-21). The Commonwealth

Defendants submit that the ADA and the RA claims are insufficient because Plaintiff's allegations do not implicate any disability-based discrimination. (Doc. 19, at 12-13). The Commonwealth Defendants further assert that Mr. Van Zandt could not have been discriminated against on the basis of his mental illness or suicidal ideation because no one truly believed he was suicidal. (Doc. 19, at 12). Instead, the Commonwealth Defendants assert that Counts One and Two are, in essence, failure-to-treat claims, which are incognizable under the ADA and RA. (Doc. 19, at 12). Plaintiff responds that the "basis for denial of the accommodation" of suicide preventions and care was Mr. Van Zandt's "mental illness and the perception that his suicidality was not genuine." (Doc. 24, at 21).

Plaintiff has alleged sufficient facts to satisfy the first two prongs of the analysis. First, Plaintiff has alleged that Mr. Van Zandt was a qualified individual by alleging that he "disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act because he was suicidal and had multiple mental health disorders at the time of his death." (Doc. 8, ¶ 162). Ultimately, this is a question of fact that "ordinarily should be resolved by a jury." *McKissick v. Cnty. of York*, No. 1:09-CV-1840, 2011 WL 5117621, at *2 (M.D. Pa. Oct. 25, 2011). Next, according to the amended complaint, the Commonwealth Defendants did not provide Mr. Van Zandt with reasonable accommodations because they denied him necessary suicide prevention methods. (Doc. 8, ¶ 166). "[I]n dictum, the Supreme Court has stated that a prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 290 (3d Cir. 2019). Applying this logic to the facts alleged here, a prison discriminates when they fail to accommodate an inmate's need for

suicide-related medical care or safe accommodations. *See Schiavone*, 2022 WL 3142615, at *8 (finding plaintiff sufficiently alleged her ADA and RA claims where she alleged decedent was denied access to medical care in the prison); *cf. McKissick v. Cty. of York*, No. 1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (allowing an ADA claim to proceed where prison officials refused to provide a detainee with drug treatment); *but see Talley v. PA Dep't of Corr.*, No. CV 19-1687, 2019 WL 6050744 (E.D. Pa. Nov. 14, 2019) ("A denial of treatment for a disability [in a prison] is not actionable under the ADA and RA."). Contrary to the Commonwealth Defendants' argument, this premise is distinct from the Third Circuit's conclusion that inadequate medical treatment cannot form the basis of an ADA or RA claim. *See, e.g., Kokinda*, 663 F. App'x. at 159. To sufficiently allege an ADA or RA claim, a plaintiff must allege they were denied access to medical care rather than just stating the medical treatment received was inadequate or deficient. *See Kloss v. Correct Care Sols.*, No. 1:18-CV-0025, 2018 WL 6268270, at *4 n.4 (W.D. Pa. Oct. 31, 2018) (stating that "[d]enying access to medications is not, however, a medical judgment or medical negligence, and such claims can be actionable under the ADA"), *report and recommendation adopted sub nom.* CV 18-25, 2018 WL 6266921 (W.D. Pa. Nov. 30, 2018); *see also McKissick*, 2010 WL 1930132, at *7 (allowing an ADA claim to proceed where prison officials refused to provide a detainee with methadone). Thus, because Plaintiff alleges Mr. Van Zandt was denied necessary suicide prevention care, Plaintiff has sufficiently pled prong two of her ADA and RA claims. (Doc. 8, ¶ 166).

The Commonwealth Defendants next submit that Plaintiff has not alleged that Mr. Van Zandt was denied medical care or safe accommodations *because* of his status as a disabled person, or in other words, because he was experiencing mental illness. *Cf. Talley*, 2019 WL

6050744, at *5 (dismissing RA and ADA claims because plaintiff failed to allege facts supporting their averment that they were denied access to prison activities because of discrimination based on their mental illness, instead pointing to the fact that the prisoner was denied access to activities because they were subject to surveillance due to their own claims of being suicidal). To meet his burden as to prong three of his ADA and RA claims, Plaintiff must also allege "facts sufficient to show" that Mr. Van Zandt had been excluded from reasonable accommodations "by reason of" his disability. *Brown v. Pa. Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (quoting 42 U.S.C. § 12132). The Third Circuit has held that showing that an accommodation has been denied "by reason of" a disability means showing that the disability "played a role" in the decision-making process. *See CG*, 734 F.3d at 236 n.11 (affirming a district court's bench trial judgment and noting that a plaintiff can show an ADA violation "so long as disability 'played a role in the ... decisionmaking process and ... had a determinative effect on the outcome of that process.'") (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 300 n. 4 (3d Cir.2007)). However, under the RA, disability must be the sole cause of the decision. *See CG*, 734 F.3d at236 n.11.

Here, Plaintiff's conclusory allegation that the Commonwealth Defendants failed to accommodate Mr. Van Zandt with adequate means of suicide prevention and care because he was suicidal or experiencing mental illness does not meet Plaintiff's burden. *Talley*, 2019 WL 6050744, at *5. Plaintiff avers in his amended complaint that Commonwealth/Department officials believed that Mr. Van Zandt's suicidality "was not genuine. (Doc. 8, ¶¶ 104, 106, 110, 215). This, alone, however does not support the inference that their disbelief was related to Decedent's mental illnesses or suicidality and is thus insufficient to meet Plaintiff's pleading burden even at this early stage of the litigation. (Doc.

8, at 34-37). Accordingly, the Court will **GRANT** the Commonwealth Defendants' motion to dismiss the ADA and RA claims in Counts One and Two. *See Brown v. Deparlos,* 492 F. App'x 211, 215 (3d Cir. 2012) (affirming the dismissal of an ADA claim where plaintiff failed to provide facts alleging that alleged inadequate medical care was given because of a disability); *see also Kokinda v. Pennsylvania Dep't of Corr.*, No. 2017 WL 4049255, at *9 (W.D. Pa. Aug. 29, 2017), *report and recommendation adopted*, 2017 WL 4046347 (W.D. Pa. Sept. 12, 2017), *aff'd*, 779 F. App'x 938 (3d Cir. 2019) (dismissing an ADA claim where "the complaint allege[d], at most, that Plaintiff received inadequate treatment and accommodations for his [disability]" without demonstrating the inadequate care was because of the alleged disability).

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Plaintiff will be granted leave to amend to cure the deficiencies outlined herein. *See Miller v. Little*, No. 22-CV-4264, 2023 WL 3674336, at *9 (E.D. Pa. May 25, 2023) (granting leave to amend when a plaintiff did not sufficiently plead ADA violations and § 1983 claims related to his care in a correctional facility).

## V.    CONCLUSION

For the foregoing reasons, the Commonwealth Defendants' motion to dismiss will be **GRANTED in part and DENIED in part**. (Doc. 18). Count One and Count Two against the

Commonwealth Defendants are **DISMISSED without prejudice**, and Plaintiff is granted leave to file an amended complaint. (Doc. 8). Defendants' motions to transfer will be **DENIED**. (Doc. 18; Doc. 20). An appropriate Order follows.

BY THE COURT:

Dated: December 30, 2024

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**

24